# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JERRY MITCHELL

VERSUS

CITY OF CENTRAL, ET AL.

CIVIL ACTION

NO. 20-294-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss Pursuant to Rule 12(b)(6)* (Doc. 14) filed by defendants Roger Corcoran ("Chief Corcoran"), Kerry Clark ("Clark"), Sheri Morris ("Morris" or "City Attorney Morris"), and City of Central ("Central" or the "City") (collectively, "Central Defendants"). Plaintiff Jerry Mitchell opposes the motion, (Doc. 17), and Central Defendants have filed a reply, (Doc. 20). Oral argument is not necessary. The Court has carefully considered the law, the facts alleged in the *Complaint*, (Doc. 1), and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Central Defendants' motion is denied without prejudice.

## I.    Relevant Factual Background

### A.  Introduction

The following facts are taken from the *Complaint*, (Doc. 1). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff in this action is Jerry Mitchell. (*Compl.*, Doc. 1 at 1.) He is a fifty-two-year-old Marine Corps veteran, and he is retired from the Louisiana State Police. (*Id.* ¶ 4.)

Defendants in this action are (1) the City of Central; (2) Roger Corcoran, who is the Chief of the Central Police Department ("CPD") and who is sued in his official capacity; (3) Officer Kerry Clark, who was a volunteer officer for the CPD and who is sued in both his individual and

official capacities; (4) Sheri Morris, who is the City Attorney for the City and who is sued in her official capacity; (5) Central Speaks Newspaper, LLC ("Central Speaks"), who is the corporate entity that publishes the online and in-print newspaper, *Central Speaks*; and (6) Sarah Griggs ("Griggs"), who is the owner of, editor-in-chief of, and reporter for *Central Speaks*. (*Id.* ¶ 1.) Central Speaks and Griggs do not join in the instant motion, which is made only by Central Defendants.

### B.  Plaintiff's Condition and Clark's Resignation

Before the events relevant to this suit, Plaintiff was briefly a Captain with the CPD. (*Compl.* ¶ 5, Doc. 1.)  But, he "had resigned his commission for medical reasons – to seek treatment for alcoholism, which is a disability recognized and protected by the Americans with Disabilities Act ('ADA')." (*Id.*)

On or about May 14, 2019, Clark resigned from the CPD through a letter of resignation directed to Chief Cochran. (*Id.* ¶ 6.)  In that letter, Clark referred to himself as the "Training Officer" and said he was a volunteer with the CPD. (*Id.* ¶ 7.)  Additionally, Clark "made clear that in his official capacity as the Training Officer he reviewed the liabilities of the [CPD] including but not limited to probable negligence in discrimination, hiring, retention, and supervision." (*Id.*)

"As part of his review, [Clark] discussed Plaintiff." (*Id.* ¶ 8.)  Clark said Plaintiff "had a history of alcoholism . . . prior to being hired to" the CPD.  (*Id.*)  Clark also stated in his letter that Plaintiff had entered an inpatient alcohol addiction program and had resigned from the CPD. (*Id.*) Further, "[d]espite Plaintiff having resigned from the [CPD] and without out any proof to substantiate his claims, [Clark] alleged Plaintiff was drinking while on duty with the [CPD] and attempted to operate a marked [CPD] vehicle when 'other employees smelled alcohol on [Plaintiff's] breath[.]' " (*Id.*)  Thus, even though alcohol addiction is protected under the ADA,

and even though Clark was the "Training Officer charged with reviewing liabilities regarding 'probable negligence in discrimination,' . . . Clark chose not to keep confidential either Plaintiff's disability or his medical treatment for same." (*Id.* ¶ 9.)

### C. Release of Plaintiff's Personal Information

At some point between May 14, 2019, and May 23, 2019, Griggs of Central Speaks made a public records request to the City for Clark's resignation letter. (*Compl.* ¶ 10, Doc. 1.)  On May 23, 2019, Griggs posted a redacted version of Clark's letter to the Central Speaks Facebook page. (*Id.* ¶ 11.)  Central Speaks advised in the comments section of this post that it obtained the redacted letter from City Attorney Morris. (*Id.*)  The posted letter redacted "any personal identifying information of Plaintiff as well as any mention of his disability." (*Id.*)  "This Facebook post received 32 'likes,' generated 88 comments, and was shared 16 times." (*Id.*)

The May 23, 2019, post also included a response letter from Central's Mayor. (*Id.* ¶ 12.) The Mayor confirmed that Clark held a volunteer position with CPD and that, "as a result of . . . Clark's review/observations [the Mayor] determined an independent third party review of the [CPD] was necessary." (*Id.*)

On May 24, 2019, Griggs then posted an *unredacted* version of Clark's resignation letter to the Central Speaks Facebook page. (*Id.* ¶ 13.)  This post "identified Plaintiff by his full name, outed his disability of alcoholism, and outed his personal medical treatment for his disability to the readership of the Central Speaks Facebook page." (*Id.*)  "Additionally, this post published the unsubstantiated allegations that Plaintiff was drinking on duty to the readership of the Central Speaks Facebook page." (*Id.*)  By the time this information was disclosed, Plaintiff had already resigned his position with the CPD and was no longer a public official. (*Id.*)  "This Facebook post received 23 'likes,' generated 59 comments, and was shared 28 times." (*Id.*)

The May 24, 2019, post had several comments in which people said that "Griggs/Central Speaks was publishing 'private medical information,' 'personal medical treatments in an employee file,' and 'a bunch of HIPPA [sic] violations.' " (*Compl.* ¶ 14, Doc. 1.)  Nevertheless, as of the filing of the *Complaint*, the unredacted version of Clark's resignation letter remained on Central Speaks' Facebook page. (*Id.*)

On May 30, 2019, Griggs published that day's edition of the *Central Speaks* in print and online as a downloadable pdf file. (*Id.* ¶ 15.)  This edition also contained the unredacted version of Clark's resignation letter, including the above personal information about Plaintiff and the unsubstantiated claim he was drinking on duty. (*Id.*)  Griggs also posted this information on the Central Speaks' Facebook page a second time, and this post generated 3 "likes" and 4 comments. (*Id.*)  As of the filing of the *Complaint*, the unredacted version of Clark's letter remained on Central Speaks' website and downloadable as a pdf. (*Id.*)

Commenters to the May 30, 2019, Facebook post again questioned the publication of officers' personal information. (*Id.* ¶ 16.)  Griggs/Central Speaks responded, "Why shouldn't it be printed? It was in the resignation letter, which the author found significant enough to include." (*Id.*)

### D.  Official Capacity Allegations

The *Complaint* pleads certain facts with respect to Plaintiff's official capacity claims. Specifically, Plaintiff alleges that Chief Corcoran "is, and at all material times was, the individual charged with the duty and granted the authority to render final decisions regarding Police Policies and Procedures regarding hiring, firing, and secure maintenance of confidential personnel records." (*Compl.* ¶ 1, Doc. 1.)  Additionally,

> [Clark] is, and at all relevant times was, a policy-making official of
> the City and [CPD], with respect to policies and practices involving

4

the facts herein, including without limitation the training of officers as well as reviewing of liabilities regarding negligence in discrimination, hiring, retention, and supervision, acting under the color of law and within his capacity as an employee, agent, representative, and servant of the City.

(*Id.*) Lastly, City Attorney Morris was likewise a policy-making official as "the individual charged with the duty and granted the authority to render final decisions regarding production of confidential personnel records in response to public records requests." (*Id.*)

### E. Claims

The *Complaint* makes several allegations about defendants' liability. At the outset, the *Complaint* states that "all Defendants knew or should have known that Plaintiff's disability of alcoholism and treatment therefor was a confidential medical record protected by the ADA." (*Compl.* ¶ 17, Doc. 1.) Further, "the City and Chief Corcoran negligently maintained and/or entrusted confidential employee personnel files, allowing a volunteer officer to view same." (*Id.* ¶ 18.) Plaintiff also pleads that "the City, Chief Corcoran, and City Attorney [Morris] knew or should have known that employee personnel files, particularly those portions which contain documentation of disabilities, are confidential and not subject to public records requests and negligently produced portions of Plaintiff's confidential personnel file to the public." (*Id.* ¶ 19.) Plaintiff next alleges that Clark, Griggs, and Central Speaks "knew or should have known that publishing Plaintiff's disability and treatment therefor would needlessly embarrass Plaintiff, would cause Plaintiff emotional distress, and would violate Plaintiff's right to privacy." (*Id.* ¶ 20.) Plaintiff claims these defendants "intentionally published same anyway in violation of the ADA, the Louisiana anti-discrimination statutes, Louisiana Revised Statutes 23:302, *et seq.*" (*Id.*) Moreover:

[Clark] knew or should have known that his resignation letter would pass through multiple City departments in order to take effect. Thus,

5

including information regarding Plaintiff's disability and treatment
therefor would violate the [CPD]'s duty to Plaintiff to keep said
information confidential. Further, in light of [Clark's] allegations
contained therein regarding the [CPD]'s inept record keeping in
conjunction with his review of liabilities regarding probable
negligence in discrimination, hiring, retention, and supervision
knew or should have known including information regarding
Plaintiff's disability and treatment therefor would violate the
[CPD]'s duty to Plaintiff to keep said information confidential.
Consequently, [Clark's] intentional and deliberate behavior is so
outrageous as to shock the conscience.

(*Id.* ¶ 21.) Finally, "to date, neither the City, Chief Corcoran, or City Attorney [Morris] have demanded Griggs/Central Speaks retract [Clark's] unredacted resignation letter[]. . . . As a consequence, Plaintiff alleges he suffered serious mental anguish, emotional distress, damage to his reputation . . . and reduction of earning capacity." (*Id.* ¶¶ 23–24.)

Count I of the *Complaint* asserts a claim against the Central Defendants under 42 U.S.C. § 1983, and Plaintiff claims a violation of his right to privacy under the Fourth Amendment. (*Id.* ¶¶ 25–26,) Plaintiff further asserts that:

The acts of the Central Police Department and the City were the
result of official policy, carried out and ratified by its officers,
including [Clark], as more fully set forth below. Specifically,
Plaintiff alleges that [Clark] was a policy-maker with respect to the
liabilities regarding probable negligence in discrimination, hiring,
retention, and supervision.

(*Id.* ¶ 27.) "[W]hile Chief Cocoran was not directly involved in the disclosure of Plaintiff's confidential disability information, [the Chief] was informed of the arrest and seizure by Defendants and ratified their actions." (*Id.* ¶ 28.)

Plaintiff also pleads that Central Defendants are not entitled to qualified immunity. (*Id.* ¶¶ 29–31.) Plaintiff claims that the contours of the law about disclosing of confidential disability/medical information were clearly established. (*Id.* ¶ 29.) Additionally, each of the Central Defendants' conduct "was either willful or done with deliberate indifference to Plaintiff['s]

6

rights, such conduct was not objectively reasonable, and a reasonable official in those circumstances would understand that what he/she was doing violated the law." (*Id.* ¶ 30.)

Count II asserts state law claims of negligence, invasion of privacy, defamation, and intentional infliction of emotional distress. (*Id.* ¶¶ 33–36.)

Plaintiff prays for declaratory and injunctive relief as well as for compensatory and punitive damages, attorney's fees, and costs. (*Id.* at 12.)

## II.      Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 574 U.S. at 11 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial

experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson*, 764 F.3d at 502–03. The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

## III.    Discussion

### A.  Section 1983 Claims

#### 1. Parties' Arguments

##### a.   Central Defendants' Original Memorandum (Doc. 14-1)

Central Defendants argue that Plaintiff's injuries were caused by the release of the unredacted version of Clark's resignation letter, but this letter was not released by the City of Central or any officer within the CPD. (Doc. 14-1 at 3.) There are no allegations that Chief Corcoran affirmatively participated in any constitutional violation or (a) that he failed to train or

8

supervise Clark, (b) that such failure was a cause of a constitutional violation, and (c) that such failure amounted to deliberate indifference. (*Id.*)  Thus, neither the City nor Chief Corcoran can be liable under § 1983. (*Id.*)

Central Defendants next contend that Plaintiff fails to state a viable claim against City Attorney Morris or Clark. (*Id.*)  Plaintiff alleges only that Morris produced a redacted version of the resignation letter, and she was required to do so by the Public Records Act. (*Id.* at 4.)  Likewise, Clark did not violate any constitutional rights by "reporting to the Chief of Police his findings of past, present, and future liabilities."  (*Id.*)  "He had access to the personnel files because it was within the scope of his job to review them. Upon resigning, he reported his findings to the Chief via resignation letter. Officer Clark's actions were within his duties as a training officer for the [CPD]." (*Id.*)  Thus, Plaintiff has no viable claim against Clark or Morris. (*Id.* at 4–5.)

Central Defendants then assert that they are entitled to qualified immunity. (*Id.* at 7.)  Chief Corcoran hired Clark to review "liabilities regarding negligence in discrimination, hiring, retention, and supervision," (*id.* at 7 (quoting *Compl.* ¶ 1)), and an officer hired for this purpose would have access to personnel files, (*id.* at 7–8.).  Similarly, Morris acted reasonably in redacting the files. (*Id.* at 8.)  Lastly, Clark is entitled to qualified immunity because he acted reasonably in reporting his findings to the Chief. (*Id.*)

b.  Plaintiff's Opposition (Doc. 17)

Plaintiff posits that "[t]his case is a genuine 'Who Done It?'" as most of [the] facts are undisputed[.]" (Doc. 17 at 1.)  After reviewing those fact, Plaintiff asks, "Which State actor delivered the unredacted letter to Griggs?" (*Id.* at 2 (emphasis omitted).)  Plaintiff maintains that this disclosure was the cause of his Fourth Amendment violation and the "identity of that State actor can only be determined by going where the evidence leads in discovery." (*Id.*)  Plaintiff urges

the Court to deny the instant motion "because discovery is needed to answer that all important question and after sufficient discovery is had, a Motion to Dismiss pursuant to Rule 12(b)(6) may well be appropriate for certain defendants but not yet." (*Id.*)

Plaintiff then explains that such discovery would start with who had access to Clark's resignation letter, and each of the three named Central Defendants did. (*Id.* at 3.) Thus, any of these defendants could have violated his rights. (*Id.* at 4.) Clark could have provided his own letter to Griggs, possibly as a "form of petty revenge on the CPD for passing him over," and in which case there would be clear liability for the failure to supervise and train him. (*Id.*) Alternatively, Chief Corcoran could have provided the unredacted letter to Griggs, which would expose him to liability but exonerate the two other Central Defendants. (*Id.*) Finally, City Attorney Morris could have provided the unredacted resignation letter to Griggs, which would result in liability to her but absolve the other two Central Defendants. (*Id.*)

Next, Plaintiff asserts that none of the Central Defendants is entitled to qualified immunity, as:

> [P]roduction of the unredacted version of Clark's resignation letter was not a discretionary function – it was an act of intended malice. . . . [I]t strains credulity beyond its breaking point that any reasonable person – or Clark, Chief Corcoran, or City Attorney Morris – would not have known that providing the unredacted version of Clark's resignation letter violated statutory or constitutional rights.

(*Id.* at 5.) Plaintiff then relies upon Louisiana Revised Statute 40:2532, which purportedly prohibits the disclosure of a law enforcement officer's confidential information. (*Id.*) Thus, Central Defendants should not be entitled to qualified immunity. (*Id.* at 5–6.)

Plaintiff concludes:

> This Honorable Court must deny the Central Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) at this juncture and allow

> discovery to proceed. Once it is determined who provided Griggs
> and Central Speaks with Clark's unredacted resignation letter, a
> motion to dismiss certain defendants may be proper but it would be
> premature to grant same without allowing sufficient discovery to
> take place.

(*Id.* at 6.)

### c.   Central Defendants' Reply (Doc. 20)

Central Defendants reply that Plaintiff has not met his burden under Rule 12(b)(6).  (Doc. 20 at 2.)  After reiterating their above arguments, these defendants then say that "there was no connection or allegation as to who specifically sent the unredacted letter or the possibility of who sent the letter." (*Id.* at 3.)  Plaintiff asserts only conclusory allegations and legal conclusions, and this is insufficient under *Twombly*. (*Id.*)  Plaintiff's entire opposition rests on the faulty premise that one of the named Central Defendants was responsible for delivering the letter anonymously to Griggs and Central Speaks. (*Id.*)  Plaintiff cannot "use discovery as a tool to find a claim, with no factual basis to support a claim in the pleadings." (*Id.*)  Plaintiff's opposition is speculative and fails to meet the pleading requirements of *Twombly*. (*Id.*)

Central Defendants next argue that Plaintiff's claim that they are not entitled to qualified immunity is also speculative, as, again, Plaintiff has not provided a factual basis for asserting that any of these defendants was responsible for providing the letter to the press. (*Id.* at 4.)  "A pleading of 'who done it?' or 'it had to be one of them' is not adequate or specific enough to overcome qualified immunity or a motion to dismiss because it is based primarily on an assumption and not a fact." (*Id.*)  Central Defendants contend:

> Clark wrote the letter, Chief Corcoran accepted the letter, and City
> Attorney Morris heavily redacted the letter before responding to the
> Public Records Request. (R. Doc. 1, R. Doc. 17) The defendants
> were required by law to release the document under the Public
> Records Act and required to make necessary redactions to protect
> the plaintiff's privacy rights, which as the plaintiff noted in both the

complaint and the opposition, the defendants did. The actions of the defendants asserted by the plaintiff in the complaint support that the defendants knew of their obligations to protect the Plaintiff's privacy and constitutional rights, by not submitting the plaintiff's personal information to Central Speaks. The defendants properly used their discretion to do so and contend that they acted in the same objectively reasonable manner as any official should have acted.

(*Id.* at 4–5.)

Central Defendants argue that, "if the reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." (*Id.* at 5 (citations omitted).)  Here, Chief Corcoran used his discretion to employ Clark and to allow him access to the personnel files to assess the liabilities of the CPD. (*Id.*)  "Officer Clark used his discretion to report the liabilities he discovered in his resignation letter to the Chief. How much of the letter needed to be redacted, by its very nature, is an action that required discretion on the part of Sheri Morris." (*Id.*)  There was no violation, but, even if there were, Central Defendants would be entitled to qualified immunity. (*Id.*)

### 2. Applicable Law

#### a.  Qualified Immunity

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)).  Courts are "permitted to exercise their sound

12

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to the second prong, " '[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)). " 'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.' " *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotations omitted)). " 'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotations omitted)).

" 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks omitted)). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).

b.  Qualified Immunity and Discovery

" 'One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive.' " *Zapata v. Melson*, 750 F.3d 481, 484–85 (5th Cir. 2014) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). " 'Consequently, the [Fifth Circuit] has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense.' " *Id.* at 485 (quoting *Backe*, 691 F.3d at 648). "[A] district court must first find 'that the plaintiffs pleadings assert facts which, if true, would overcome the defense of qualified immunity.' " *Id.* (quoting *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). " 'Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.' " *Id.* (quoting *Backe*, 691 F.3d at 648). " 'After the district court finds a plaintiff has so pleaded, if the court remains "unable to rule on the immunity defense without further clarification of the facts," it may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim." ' " *Id.* (quoting *Backe*, 691 F.3d at 648 (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987))).

For example, in *Khansari v. City of Houston*, 14 F. Supp. 3d 842 (S.D. Tex. 2014), the district court found that the plaintiffs had sufficiently pled allegations against seven officers who purportedly applied excessive force against one plaintiff to entitle plaintiffs to limited discovery as to which of the officers used tasers against him and which officers had an opportunity to prevent the use of excessive force so that the court could rule on the issue of qualified immunity. *Id.* at 860–61.  The court stated:

> Since the court has concluded that plaintiffs' pleadings are adequate to at least potentially state a claim, discovery may proceed on the limited issue of which of the individual officers tasered Corey and whether those officers are entitled to qualified immunity. The court has not concluded that plaintiffs will eventually be able to establish a violation of Corey's Fourth Amendment rights, but only that the pleadings are sufficient to create that possibility. Should discovery lead to the conclusion that there is no genuine issue of fact that could support such a claim, there will be no procedural or substantive barrier to the filing of a motion for summary judgment on the issue of qualified immunity. Accordingly, the motion to dismiss the claims asserted against the individual officer defendants arising from force used against Corey Khansari will be denied.

*Id.* at 861.

### c.   Constitutional Right to Privacy

"The right to privacy consists of two inter-related strands; one protects an individual's interest in avoiding disclosure of personal matters (the confidentiality strand) and the other protects an individual's interest in making certain personal decisions free of government interference (the autonomy strand)." *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996) (citing *Fadjo v. Coon*, 633 F.2d 1172, 1175 (5th Cir. 1981). "In the context of government disclosure of personal matters, an individual's right to privacy is violated if: (1) the person had a legitimate expectation of privacy; and (2) that privacy interest outweighs the public need for disclosure." *Id.* (citing *Fadjo*, 633 F.2d at 1175–76).

As to the first prong, "[t]he constitutional right to privacy in personal information is limited to 'only the most intimate aspects of human affairs,' such as medical records, information involving allegations of homosexuality, and child molestation, among others." *Scruggs v. City of Bowie*, No. 7:14-CV-00123-O, 2016 WL 9244213, at *9 (N.D. Tex. July 29, 2016) (citing *Zaffuto v. City of Hammond*, 308 F.3d 485, 490 (5th Cir. 2002)); *see also Fadjo*, 633 F.2d at 1177 (stating that "confidentiality [has been] found to extend beyond the 'matters relating to marriage,

procreation, contraception, family relationships, and child rearing and education' " (citations omitted)).  Thus, for instance, in *American Civil Liberties Union of Mississippi, Inc. v. State of Mississippi*, 911 F.2d 1066 (5th Cir. 1990), the Fifth Circuit found that plaintiffs "undeniably [had] an interest in restricting the disclosure of . . . information in . . . files" which "include[d] numerous instances of (often unsubstantiated) allegations of homosexuality, child molestation, illegitimate births, and sexual promiscuity, as well as reports of financial improprieties, drug abuse, and extreme political and religious views." *Id.* at 1070

As to the second requirement, "the district court must balance the invasion of privacy alleged by [Plaintiff] against any legitimate interests proven by the [government actor]." *Fadjo*, 633 F.2d at 1176.  "[B]ecause a constitutional right is at stake, more than mere rationality must be demonstrated to justify a state intrusion." *Id.* at 1176 (cleaned up).  "Both the Supreme Court and this circuit have upheld state actions impinging on individual interests in confidentiality only after careful analysis." *Id.* "An intrusion into the interest in avoiding disclosure of personal information will thus only be upheld when the government demonstrates a legitimate state interest which is found to outweigh the threat to the plaintiff's privacy interest." *Id.*

### 3. Analysis

Having carefully considered the matter, the Court will deny Central Defendants' motion without prejudice and defer ruling on the issue of qualified immunity pending limited discovery. Preliminarily, "[t]he Court notes that neither party has offered significant briefing on the question of Plaintiff's [c]onstitutional right to privacy." *Stuard v. Terrebonne Par. Consol. Gov't*, No. 09-3790, 2011 WL 337883, at *4 (E.D. La. Jan. 31, 2011).  "Specifically, neither party has argued that Plaintiff had a legitimate expectation of privacy regarding his" medical information, "nor have they argued about the appropriate constitutional balance between Plaintiff's alleged privacy

interest and the public's need for disclosure." *Id.*  On this ground alone, the Court could deny the instant motion. *See id*.

Putting this aside, the Court does find that the Plaintiff has overcome qualified immunity with respect to the disclosure to the press of his name, his medical condition, and the unsubstantiated charges against him.  It cannot be seriously disputed that Plaintiff's alcoholism was a personal matter for which he had a legitimate expectation of privacy. *See Am. C.L. Union of Miss.*, 911 F.2d at 1070 (finding that plaintiffs had privacy interest in records which contained, *inter alia*, instances of "drug abuse"); *Mullen v. City of Grenada, Miss.*, 704 F. Supp. 2d 567, 574 (N.D. Miss. 2010) ("The allegation in this case relates to statements that Mullen abused drugs. The abuse of drugs is one of the types of allegations the Fifth Circuit has put under the protection of the Fourteenth Amendment." (citing *Am. C.L. Union of Miss.*, 911 F.2d at 1070)).

As to the second prong, while each of the Central Defendants may have had some legitimate interest with the resignation letter (Clark with reporting to his superiors pursuant to his duties, Chief Corcoran with receiving the information, and City Attorney Morris in responding to a public records request), none of the Defendants had a legitimate interest in disclosing the *unredacted* version to Griggs and the Central Speaks.  Any legitimate interest in informing the public could have been achieved by keeping Plaintiff's name redacted.  *See Am. C.L. Union of Miss.*, 911 F.2d at 1074–75 (finding that the district court decision to release certain confidential files to the public without restriction "[did] not give sufficient weight to the interest in accommodating privacy concerns" and explaining that, "even the simple task of redacting actual names but not deleting any identifying information about unnamed persons would protect privacy to a considerable extent while likely having almost no adverse effect upon the ability of victims of unlawful intrusion to gain information concerning that intrusion."); *Mullen*, 704 F. Supp. 2d at 574

(finding that plaintiff police officer who had tested positive for cocaine had a viable privacy claim because, while "[t]here [was] no dispute that [plaintiff] had to submit to drug testing in order to be a narcotics officer[,] . . . there [wa]s no legitimate reason for that information to be disclosed to the general public[,]" and "[n]o weighing of these factors [could] allow for public disclosure of this fact."). This finding is particularly true given the Louisiana law prohibiting the disclosure of confidential information of officers under investigation:

> No person, agency, or department shall release to the news media, press or any other public information agency, a law enforcement officer's home address, photograph, or any information that may be deemed otherwise confidential, without the express written consent of the law enforcement officer, with respect to an investigation of the law enforcement officer.

La. R.S. 40:2532.  Given this statute, and given the clearly established law concerning the constitutional right to privacy, no reasonable officer could believe that it was lawful to provide an unredacted copy of Clark's resignation letter to the press when it contained Plaintiff's name, Plaintiff's alcohol addiction, and unsubstantiated charges regarding same.  Thus, Plaintiff has overcome qualified immunity.

Central Defendants' sole response to this, flushed out in their reply, is that Plaintiff has not sufficiently alleged that any of these particular defendants was responsible for the disclosure. However, on a motion to dismiss, all well-pleaded facts must be viewed in a light most favorable to Plaintiff, and reasonable inferences must be drawn in Plaintiff's favor. *Thompson*, 764 F.3d at 502–03.  Likewise, " 'a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.' " *Zapata*, 750 F.3d at 485. (quoting *Backe*, 691 F.3d at 648).  Here, Plaintiff sufficiently pleads facts from which

the inference can be drawn that at least one of the three named Defendants was responsible for the disclosure of the unredacted letter.

But, as stated above, "if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim," *id*. (cleaned up), and, here, the Court finds that this procedure is appropriate.  While it is plausible that one of the Central Defendants disclosed the unredacted letter, the Court cannot determine at this time which of them did.

Therefore, the Court will deny the instant motion without prejudice on the issue of qualified immunity and allow limited discovery on the question of which Central Defendant committed the constitutional violation. *See Khansari*, 14 F. Supp. 3d at 861; *Saunders v. Duke*, 766 F.3d 1262, 1269 n.2 (11th Cir. 2014) (allowing discovery by a plaintiff to determine which of three defendants who were present at the time of the incident struck him in violation of the Fourth Amendment); *Tennart v. City of Baton Rouge*, No. 17-179, slip op. at 1–2 (M.D. La. Sept. 6, 2018) (deGravelles, J.) (deferring ruling on motion to dismiss in case involving alleged constitutional violations during mass protests "to allow limited written discovery on the narrow issue of which Individual EBRSO Deputies (if any) were involved in the alleged constitutional violations").

### *4. Official Capacity Claims*

The Court notes in closing that Plaintiff has asserted claims against the City, Chief Corcoran, and City Attorney Morris in their official capacities. (*Compl.* ¶ 1, Doc. 1.)  "An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent.  To determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983." *Skinner v. Ard*, --- F. Supp. 3d. ----, No. 19-66, 2021 WL 388830, at *5 (M.D. La. Feb. 3,

2021) (deGravelles, J.) (citing *Romain v. Governor's Office of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016)).

Here, neither party provides any serious briefing on the extensive standards required to impose municipal liability. *See id.* at *5–8; *see also Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (discussing liability of municipality for single decision by final policymaker). Instead, both sides focus almost exclusively on whether the Central Defendants committed constitutional violations and are entitled to qualified immunity. *See* "Parties Arguments," § III.A.1, *supra*. Although official capacity claims "fail without an underlying constitutional violation," *Whitley v. Hanna*, 726 F.3d 631, 648–49 (5th Cir. 2013) (cleaned up), there appear to be other bases for dismissing Plaintiff's claims for failing to satisfy the standards summarized in *Skinner*. Likewise, while Plaintiff's *Complaint* references ratification liability, (*Compl.* ¶ 27, Doc. 1), and while Central Defendants perfunctorily seek dismissal of same, (Doc. 14-1 at 3), again, neither side gives any legal authority on this issue. *See, e.g., Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final. . . . But [Fifth Circuit] precedent has limited the theory of ratification to extreme factual situations." (cleaned up)); *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986) (finding that the trial court correctly directed a verdict for the county and that ratification was not applicable); *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161 (5th Cir. 1985) (serving as one of the "extreme" factual scenarios justifying liability for ratification).

Given the lack of developed briefing on this issue, the Court will deny the motion to dismiss the official capacity claims. *See Stuard*, 2011 WL 337883, at *4. Defendant may urge such a motion following limited discovery on qualified immunity.

The Court cautions Plaintiff that, if discovery reveals which Central Defendant is liable for the underlying violation, and if Plaintiff believes that his *Complaint* is deficient, he is expected to amend it to cure any of these deficiencies.  Plaintiff is hereby put on notice that, if he fails to do so and the Court later grants a motion to dismiss these claims, he will be denied further opportunity to amend.

### B.  State Law Claims

Central Defendants also seek dismissal of Plaintiff's state law claims. (Doc. 14-1 at 8–9.) They argue that Louisiana law allows those responding to a public records request to redact confidential information. (*Id.* at 9–10.)  Central Defendants maintain that they properly redacted the letter in accordance with that law. (*Id.* at 10.)  They conclude:

> The letter of resignation was requested and released as a public record under Louisiana Revised Statute § 44:1 (2)(a). The letter was released with the proper and necessary redactions under Louisiana Revised Statute § 44:32 (B). The claims that Chief Corcoran, City Attorney Morris, Officer Clark, and the City of Central are responsible for negligence, invasion of privacy, defamation, and intentional infliction of emotional distress are without merit. As such, any such claims should be dismissed.

(*Id.*)  Plaintiff's arguments are largely set forth above.  Central Defendants' reply was as well.

Having carefully considered the matter, the Court will deny the motion to dismiss the state law claims without prejudice.  Central Defendants' entire position rests on the premise that they disclosed only a redacted letter.  But, as explained above, when construing the facts in a light most favorable to Plaintiff and drawing reasonable inferences in his favor, the *Complaint* alleges that one of the Central Defendants released an unredacted version of the letter to the press and that there was no justification for this conduct.  Thus, Central Defendants' arguments on the state law claims fail at this time.

However, the Court will deny this motion without prejudice.  Central Defendants may re-urge this motion if, at the conclusion of the above limited discovery, it is revealed that none of these defendants was responsible for releasing the unredacted version of the resignation letter to Griggs and Central Speaks.

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Pursuant to Rule 12(b)(6)* (Doc. 14) filed by defendants Roger Corcoran, Kerry Clark, Sheri Morris, and City of Central is **DENIED WITHOUT PREJUDICE.**  While Plaintiff has adequately pled enough to overcome qualified immunity, the Court cannot determine at this time whether any of the Central Defendants are entitled to qualified immunity.  Thus, the Court will defer ruling on this issue to allow limited discovery on the sole issue of which Central Defendant was liable for disclosing the unredacted letter to Sarah Griggs and Central Speaks Newspaper, LLC.  The Magistrate Judge will determine what limited discovery will be allowed for this issue.  Plaintiff may amend his *Complaint* after the completion of this limited discovery, and Central Defendants may then file a new motion to dismiss, if necessary.

**IT IS FURTHER ORDERED** that the motion to dismiss is **DENIED WITHOUT PREJUDICE** with respect to the state law claims, pending the outcome of limited discovery.

Signed in Baton Rouge, Louisiana, on <u>September 17, 2021</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**